Freeman, J.,
delivered the opinion of the court.
This suit is brought by Carroll, administrator of John Hinton, for the use and benefit of the widow and children, to recover damages for killing said Hinton, by running a train of cars over a hand-car, on which said Hinton was at the time.
*349 There are several counts, in the declaration, in one of which the facts are set out at large, and among others, that. said Hinton was an employee of the Nashville & Chattanooga Railroad Cbmpany, on which road the killing was done. We need not notice the pleadings at length, farther than to say, that the gravamen of the complaint is the negligence of the company or companies, by their agents, by which the injury was done.
Á demurrer was filed to the declaration by both companies sued. Only one point raised by the demurrer need be noticed here, that is the point made by the Nashville & Chattanooga Railroad Company, that the “ declaration showed on its face that the plaintiff’s intestate was an employee of said company, and fails to show such a state of facts as entitles him to a recovery against them.” The demurrers were overruled, and pleas of not guilty, with notices of special matters of defense filed, on which issues were ultimately made and the case tried by a jury, who rendered a verdict for $10,000, under charge of the court, from which there is an appeal in error to this court.
It is proper to state here, that the notice filed by the Memphis & Charleston Railroad Company, stated as matter to be relied on in defense, “that Hinton was killed by a train under the management and control of the officers and agents of the Nashville & Chattanooga Railroad Company, and that the Memphis & Charleston road did not own nor control said road or track, nor train by which said accident occurred, at *350 the point where it happened; that is, between Stephenson, Alabama and Chattanooga, Tennessee.”
They further gave notice of defense, that Hinton was killed by his own negligence, in such way that defendant was not liable. The ground of defense stated by the Memphis & Charleston 'Railroad, that they did not own the road, was stricken out by the court on motion, to which it excepted. An amended count was filed by the plaintiff, in which it was alleged that the injury was caused by the careless and negligent running of a train of defendants’ by their agents, which agents . were superior in authority to the deceased in running said train. Several questions are presented and urged here for reversal, which we will proceed to notice, as far as deemed material for decision of the case.
The Nashville and Chattanooga company had entered into an agreement by which it was to transfer the freights and passengers of the Memphis & Charleston road, from the point of intersection at Stephenson to Chattanooga, on their track, in the cars of the said Memphis & Charleston road. By the terms of said contract, as between the companies, this was to be done at the risk of the Memphis & Charleston road, except for such damages as were clearly the result of negligence on part of the Nashville & Chattanooga Railroad Company. In case of suit against the Chattanooga company for other damage than that caused by its own negligence, it was to be indemnified by the Memphis & Charleston road, and in case of suit against the Memphis & Charleston road for dam *351 ages caused by the fault or negligence of the Nashville & Chattanooga company, the Memphis & Charleston company was in like manner to be idemnified by the other company. . A rate of charges for each passenger, and. also for freights, was agreed on, at which rates the Memphis & Charleston road agreed to account to the Nashville & Chattanooga company for the passage of such passsengers and freight over their road.
There are a number of stipulations between said companies regulating the details of this arrangement, which need not be noticed here. Among others, it was however provided, that the passenger trains of the Memphis and Charleston road shall be accompanied by the conductor of said road and their train hands, without charge. It was however agreed, that the Memphis & Charleston cars were to be transferred by the regular passenger and freight trains on said Nashville & Chattanooga road, extraordinary casualties excepted; and it was further agreed that the Nashville »& Chattanooga road were to keep a locomotive at Stephenson, to be used in emergencies by the Charleston road upon the road of the Nashville & Chattanooga company to complete connections, or otherwise such use to be at the risk of the Memphis & Charleston road for all accident or damage occasioned by its own fault or negligence; and it was further stipulated, that in case of emergency, the Memphis & Charleston Railroad Company might use their own locomotive upon the Nashville & Chattanooga road at the risk of the Memphis & Charleston road for accidents and damages.
*352 The proof shows that the deceased was in the employ of the Nashville & Chattanooga Bailroad Company at the time of his death as section foreman, or “ boss/’ as he is called, and was killed by an engine and train belonging to the Memphis & Charleston road, running on the Nashville & Chattanooga Bailroad track. It appears that the train by which Hinton was killed had been delayed at Courtland, Alabama, by a sleeping car running off the track and obstructing it before the arrival of said train at that point. A dispatch was sent to the Assistant Superintendent, Mr. Williams, of the Memphis & Charleston road, informing him of the delay of this train, known in the record as No. 3. Williams telegraphed the fact to the Superintendent of the Nashville & Chattagnooga Bailroad, at Nashville, in order that he might arrange for the passage of this delayed train. When this train reached Stephenson, a conductor of the Nashville & Chattanooga road took charge of it as conductor, but it was run by the engineer and employees of the Memphis & Charleston road, under his orders, and the conductor took charge of the train under the orders of Thomas, the General Superintendent of the Nashville & Chattanooga road. This seems to have been the custom under the contract, when no engine of the Nashville & Chattanooga road was at Stephenson in such an emergency.
Under this state of facts it is insisted that the train was entirely under the charge and control of the Nashville & Chattanooga Bailroad Company, they *353 having undertaken, as “ contractors,” to carry tlie trains of the Memphis & Charleston road through from Stephenson to Chattanooga. The court instructed the jury that this contract, herein before referred to, between the Nashville & Chattanooga Railroad Company and the Memphis & Charleston Railroad Company, was irrelevant, and excluded the same from consideration of the jury. He then charged them that they should look to the testimony and see if the deceased was killed by the locomotive, ears or train of defendants, or either one of them, and if so the plaintiff would be entitled to recover, unless precluded on the principles and law,” as afterwards given by the court. He then tells the jury, in response to request of counsel of defendant, Memphis & Charleston Railroad Company, that “if the proof satisfies your minds that the Memphis & Charleston Company at Stephenson, or any other point, before the arrival of the cars at the place where the injury occurred, surrendered all control and custody over the cars and engine and committed them to the exclusive charge and control of the Nashville & Chattanooga road, the Memphis & Charleston Railroad Company would not be liable, notwithstanding it owned the cars used on the track of the other road. But,” he adds, that “ if the jury were satisfied that the employees of both companies were engaged and co-operating in running the cars and jointly controlling them, the companies would both be liable.”
We hold this charge was substantially correct. It was a question of fact for the jury . to determine *354 whether the injury was done by the one company or the other, or both, through their agents and employees. Mr. Redfield, in his work on Railways, p. 591, states the rule to be that “a railway company is always responsible for an injury occasioned by want of proper care and prudence on the part of its servants in the management of a train which is under their exclusive care, management and control, though belonging to another company; and if such injury results from negligence of another company, which has a joint right with defendant to use defendants’ track under a lease, and which is running trains over defendants’ track on its own account, the defendants are not responsible.” The principle is, that where one has exclusive control and management of the train, whether owner or not of the cars, it is responsible for damages for wrong; and if this be so, it follows necessarily that if in fact that control be joint, and the train jointly under the control of agents of the two companies, then both must be held responsible. Two persons may be joint masters, and thereby subject to a joint liability for the acts of servants or employees; and such joint liability may be converted into a several liability by the election of plaintiff to sue only one, which may be done in such a case. See Pars. Con., vol. 1, note 10, p. 106 In fact, the liability of two corporations must depend on the same principle in the main as in case of private individuals. On this question there is no error in his Honor’s charge of which the plaintiffs in error can complain.
The next question presented is as to the question *355 of liability, by reason of the fact that Hinton was an •employee of the Nashville and Chattanooga Railroad Company; and it is insisted that one employee of a railroad company can not recover against the company for an injury received by the negligence of another employee, and that he takes all the risks so far as the company is concerned of such negligence when he enters into the contract^ and is presumed to bargain for compensation in reference to such risk. This question is raised by the demurrer to the declaration and by the charge of his honor. On this point, the court instructed the jury that if Hinton was in the employ of the defendant, Nashville and Chattanooga Railroad Company, and the injury was the result of the negligence of his co-employees, who stood in the same degree with Hinton to the company, or were subordinate to him in position, then the plaintiff ean not recover; but if the injury to Hinton occurred through the negligence of an officer or agent of the company who held a position superior to Hinton, then the mere fact that Hinton was an employee would not prevent him from recovering.
It is insisted' that this court, in at least two cases if not more, has decided that an employee can not recover in such case as this, for the negligence of another employee of the same master, against such master. We will for a moment examine these cases. The case of Fox v. Bandford, 4 Sneed, was a suit brought by Fox against Shepherd, Leeds & Hoyt, the undertakers of a building, and Sandford, an employee under them, to recover damages for the reckless man
*356 agement by Sandford of a “derrick/7 by which Fox was thrown to the ground and injured seriously. Shepherd, Leeds & Hoyt, the undertakers, were not present at the time of the injury, and had nothing to do with causing it, farther than being employers of both parties. Sandford and Fox were simply employees at work on the same house, and were emphatically and clearly joint employees in doing the same identical character of work on the same building. The court charged the jury, that if it appeared that Fox and Sandford were in the employment of Shepherd, Leeds & Hoyt, engaged in a common employment, and the injury occasioned by negligence or unskillfulness ■ of Sandford, Fox could not recover. This court say, Caruthers, J., delivering the opinion, “we are brought to the same, conclusion as the Circuit Judge, from weight of authority, as well as the reason of the rule, as applied to the facts of the case before us:” p. 47; and we have no doubt of the correctness of that decision, in the language of the court, as applied to the facts of the case. But it will be seen the facts of that case present a very different case from the one before us. In that case the employees were engaged in a common employment, equal as employees, and engaged in precisely the same work. Here the parties, while employed by the. same employer and engaged to do service on the same road, were not engaged in the same work, nor necessarily by their contracts bound to work together, or in connection, the one with the other. They were at work at different places, in different *357 departments, so to speak, of tlie varied employments incident to the management of a line 7of railway, and as diverse in tbeir character as can be conceived.
The two cases being diverse in their essential facts, the one can not be decisive of the other, nor can the rule laid down in one necessarily control the other.
The next case referred to is Washburn v. N. & C. R. R. Co., 3 Head, 638. This was a case of injury by collision of two trains, the result of orders of superintendent, by which plaintiff was injured. The Circuit Court charged the jury that the parties being both employees of the company, the superintendent and plaintiff, the plaintiff could not maintain his action if there was no fault of the company; that it made no difference that one servant was higher in authority than the other, or that they belonged to different departments of the service. The court say in reference to this principle, McKinney, J., delivering the opinion, p. 642: “The principle that the master is not liable for an injury received by one servant from the negligence of another while both are acting in the common business of the same master, as applied to railroad companies, is comparatively a new one everywhere, but especially in our courts. It is a principle of great practical importance, and care must be taken that it be not applied to cases not clearly falling within it. In some of its incidents it can scarcely be considered as fully settled yet. Whether the rule be applicable to servants of different grades, or where they are subordinate the one to *358 the other, or not in the same employment, are questions on .which there is some conflict of opinion in American cases.” He concedes, however, that in most of 'the cases it seems such distinctions are not thought to be maintainable. He then adds, that in the view taken of the case, it was not necessary to minutely consider to what extent the application of the rule may be varied by the different circumstances of particular' cases. “We must be careful however,” he says, “that such latitude be not given to the rule as would” enable the corporation to evade liability in all cases, by entrenching itself behind its officers and agents.” It is evident this case does not decide the question against the liability of the corporation in a case like the present. On the contrary, it clearly appears that the learned Judge did not consider the question settled in this State by previous decisions, and that he saw and felt the importance of proper limitations on the application of the general rule in case of railway companies and their employees acting in different positions and independent branches of the varied employments incident to the running of such roads.
The next case referred to is the case of the Nashville & Chattanooga Railroad Company v. Elliott, 1 Col., 616. In this case the injury was claimed to-have occurred by reason of defect in construction of a bridge and in the character or construction of an engine, the party injured being a hand employed on said engine. The points presented for decision in that case were simply on the charge of the court, “ that the company were bound to see that the road was in *359 good order and safe* and that the engines were perfect and properly constructed, according to the present state of the art, and also, to have competent and prudent engineers, and that if the road and machinery were safe and perfect, and the locomotive by accident run off the track and caused an injury to plaintiff, the company, in the absence of fault or negligence on their part, would not be responsible.” This charge was held to be correct. This question and another, on the question of notice of defects by agents of the company, (an engineer in that case) were the only points raised or decided by the court on the question of liability of the company. It is obvious this case did not call for a decision of the question now before us.
It is true, however, that the learned Judge in that opinion, before he takes up the questions presented for decision, states some general propositions as to the difference between the extent of the liability of a company for injuries to passengers and injury to employees, and states in substance that the servant, in entering into the service, knows or is presumed to know that there are extraordinary dangers inseparable from such service which no human foresight or care can always provide against. He then adds, “but if he voluntarily engages to serve, in view of all the hazards to which he will be exposed, it is well settled that, as between himself and employer, he undertakes to run all the ordinary risks of the service;” and then says this includes the risk of injuries, not only from his own want of care, but likewise the *360 risk of injuries from the negligence of his fellow servants. This doctrine however, he says, must be taken with the qualification that the employer must take care not to expose the servant to any risk by associating him with other servants wanting in ordinary skill and prudence, or by use of unsafe or unsuitable machinery, or other culpable negligence: 1 Col., 616, 617.
As applied to the case under consideration and with the qualifications carefully given in conclusion of this extract, we think there need be no objection to this statement of the general rule. But the question is not even met in this statement of the rule, as to who are “fellow servants” in the sense of the rule, and then, even in cases of employer and employee under the above rule, he says the employer would be liable, not only for acts of servants wanting in proper skill or care, or for unsuitable machinery, but “ for other culpable negligence.” We assume that as against such ordinary risks as are incident to the particular employment, and against which human foresight and sagacity could not be expected to provide, an employee may well be held by the terms of his contract to take them on himself; but that his contract does not by its fair construction, necessarily imply that he shall take the risk of all culpable negligence of which any other agent or employee of the company may be guilty in the performance of the duties of his employment for their mutual employer, with whom he may have by the nature of his own employment no necessary or proper connection or association.
*361 We now proceed to examine this question on principle and authority, with a view, as far as we can, of settling the rule applicable to the case in hand, assuming that none of the oases are decisive of the question presented, and that so far as these cases are concerned, the question is an open one in this State.
In the case of Memphis and Charleston Railroad, Company v. Jones, 2 Head, the facts were, that two negroes had been hired by Jones to the company to work on the road, and it was expressly stipulated in the contract that “all risks incurred, or liability to accidents while in the employ of the company, is compensated for and covered by the pay agreed on — $23 per month — the company assuming no responsibility for damages from accident or any cause whatever.
It was insisted in this case, that by the express terms of the contract the company was exempt from liability, it assuming “no responsibility for damages by accident or any cause whatever.” The court, however, held “that it was absurd to hold that the intention of the parties was that the company should be exempt from liability, not only against all ordinary casualties to which the slave might be exposed in working on the road, but likewise against injury or loss occasioned by the willful, wrong or gross negligence of the company itself, or its agents.” Now, if the company was held liable over the terms of an express contract as strong as this, it seems to us much more would it be liable as against any fair implication to the contrary, growing out of the simple contract of an employee who undertakes to serve them. *362 in one capacity and one department of labor, where the injury results from negligence of the company, by its agents, who are engaged in a different department of labor with which he has no connection. We concede the correctness of the general rule as established by all the English and nearly all the American authorities, that a servant or employee who is injured by the negligence or misconduct of his fellow-servants or employees, can maiutain no action against the master for such injury. On this proposition there is, and can be, no difficulty. But the question is, who are, in the proper sense of the terms, fellow-servants or employees? In cases of employees of railroads, are all fellow-servants and employees who happen to be employed by the same master or company to do work of any kind in any department of the varied employments of such corporations, whether ‘ they have any necessary connection,- the one with the other, by virtue of such contract or not, to be included within the rule? This is the question upon which there is diversity of opinion, and upon which we are to decide in this case. We hold that upon this point the rule requires, on sound principle, to be applied with proper limitations, based upon the fair terms of the contract itself and sound legal analogies. The rule, we hold, can not be held to apply as between an employee in one department of the work of a railroad company, separate, distinct, and apart from the work of the other employee by whom he is injured, who has no immediate or necessary connection with the work in which the injured *363 employee is engaged, further than being in employment on the same road and by the same company, where the injury is caused by the negligence or carelessness or want of skill of such employee or agent of the company in the performance of the work of such company. This rule is supported by authorities of equal weight, though less in number, than the contrary rule, and in our judgment, by the greater weight of reason and sound principle. Mr. Redfield has been cited as the authority for the opposite rule, but in his work on Railways, vol. 1, 532, 533, note to case of Nashville & Louisville Railroad v. Collins, it will be seen that the weight of his judgment is in favor of a modification of the rule. He says: “ It is safe therefore to state, after a review of the authorities, that all the cases, both English and American, maintain the general rule to the extent of those who are strictly “ fellow-servants” in the same department of service. And where this is not the fact, but the employees are so far removed from each other that the one is not bound to obey the directions of the other, so that the superior may fairly be regarded as representing the master, we think it more consonant with reason and justice to treat the matter as not coming within the principle of the rule.” In conclusion of this note, p. 532, he says: “ But we would be content to treat all subordinates who were under the control of a superior as entitled to hold such superior as representing the master, and the master as responsible for. his incompetency or misconduct. We should,” he adds, “regard this as the more salutary rule, *364 upon the whole, than the present one;” but he concedes the current of authority to be the other way.
We can not see that any other rule than the one here indicated can be fairly arrived at, unless we discard ' in favor of railroad corporations the general principle of respondeat superior, which has been so long and uniformly adopted, in cases where by the act of the agent of servant in performance of the work of the superior an injury is done to a stranger. We can see no principle of connection between employees of different grades and in different departments and kinds of labor, separate from each other, upon a railroad, upon which the exception can fairly stand. This case very well illustrates the rule we have laid down. Hinton was a trackman or u boss,” 'as he is called, employed by the company in keeping in order and repair a section of their road. As such, he had no necessary connection or association with the conductors and employees who were engaged in running the passenger trains under the direction of the General Superintendent of the company. They were separate and distinct in their employments, and the one had in nowise contracted to be associated with the other by reason of their employment. The only point of connection between the parties was that each, was employed to do his own work at different points, in different departments of the business of the company, by the same employer. We can not see that such connection can furnish any ground on which an exemption from liability on the part of the principal *365 can fairly be based. As to the principle involved in this discussion, we refer to the case of Railroad Company v. Collins, American Law Register, vol. 5, p. 267 — an opinion by Robertson, Chief Justice of the Supreme Court of Kentucky, in which the question is treated with marked ability and great force of reasoning.
This case in its main features was followed in case of Haynes v. East Tennessee and Georgia Railroad, 3 Col., 223, and we think is the sounder view of the law on the subject. It is true in these cases the question, is mainly rested on the grounds of difference in rank or grade of employment of the party injured, and the servant by whom he was injured. We think the principle we. have laid down is in effect the same, only distinguishing the principle by the employment, being in different and disconnected departments of the work of the same company, rather than by the simple question of rank. His Honor the Circuit Judge, in this case, in his charge put the question on the difference in rank of the parties in part; but, as we can clearly see on the facts the case was decided correctly on this branch of it, we see no error’ in the statement of the law by his Honor of which plaintiffs in error can complain. We need not cite the various authorities referred to by counsel on this question. Suffice it to say, most of them have been examined, and we feel well satisfied with the correctness of the principle we have adopted in this opinion.
The question of contributory negligence on the part of deceased, and the charge of his Honor on the sub- *366 jeet, has been pressed very earnestly before us for reversal. We are aware there has been much confusion and contradictory decision, and as we think, much that is far from being sound in principle, or fairly Reducible from the original cases on which such decisions are professedly based. The leading case on this question is Butterfield v. Forrester, 11 East, 60, where a party sued the defendant in consequence of an injury received by his riding against an obstruction wrongfully placed in the highway by him. The plaintiff was riding furiously in the evening when he rode against the obstruction, and might have avoided it by reasonable care. The court held, that if he had used ordinary care he must have seen the obstruction, so that the accident appeared to happen entirely from his own fault; and it was said, that one person being in fault will not dispense with another’s using ordinary care for himself. This principle is certainly sound, in view of the facts of the case. Many cases have stated the rule, that if the plaintiff in any degree contributed to the injury he can not recover. These dieta and even decisions we do not think supported by sound principle or authority. We think his Honor the Circuit Judge stated the rule with substantial accuracy in the charge before us. He says in substance, that “if you find that Hinton was by reason of his employment necessarily on the track of the road, and was killed by the train running over him, under circumstances of negligence, such as indicated in his charge, the plaintiff might recover.” “If, however,” he says, “the injuries were the result of negligence on the part of *367 Hinton, or if he could have avoided them by ordinary care, then the plaintiff can not recover, unless you find that the defendant was guilty of gross negligence, which was the more direct cause of the injury, and then the plaintiff might recover, but that the jury might look to the negligence of the plaintiff’s intestate, if any, in mitigation of damages.”
This rule, as we have said, is substantially correct, and involves the proposition that the jury were to look to see whose negligence was the immediate, proximate and efficient cause of the injury. If the neglect of the company, then it was responsible.
The rule on this subject is thus laid down by this court in the case of Whirley v. Whiteman et als., 1 Head, 619, in an able opinion by Judge McKinney, in which he says: “But it is an important and well established qualification of the principle, that when a party brings an injury on himself, or contributes to it, that the mere want of a superior degree of care or diligence can not be set up as a bar to the plaintiff’s claim for redress, and that although the plaintiff may have himself been guilty of negligence, yet unless he might, by the exercise of ordinary care, have avoided the consequences of defendant’s negligence, he will be entitled to recover.” He adds: “It is likewise true that in cases of mutual negligence, when the parties are equally blamable, there can be no recovery.” Without citing the numerous authorities on this question, we are content with the principle thus laid down, and think his Honor’s charge is substantially correct on this question. See Red., 193, 194.
*368 It is urged before us iu argument, that the court erred in refusing to allow an “expert” to prove what was meant by an “obstruction,” as understood by railroad men, and whether a hand car, when on the track, amounted to such an obstruction. We can not see that there was any error in the ruling of the court in excluding this evidence. The question of what is, or what is not, an obstruction on a railroad track, is not a question on the terms used in art, nor within any of the rules laid down on this subject. It is a simple question of fact, and can only mean that which may obstruct or hinder the free and safe passage of the train, or that which may receive an injury or damage, such as would be unlawful to inflict, if run over or against by the train, as in case of stock, or a man approaching on the track.
We have thus endeavored to investigate the main questions of law presented in argument for reversal of this case. One other question need only be noticed, and that is, that the evidence does not sustain the verdict.- On this question we need only say, that while the sum given is large, we can not say that it is so unreasonable as that we should reverse for it; nor in fact can we say, under all the circumstances, that it is beyond what a jury might well have given, under the evidence in this case, for the loss of a husband and father under the circumstances shown • in this record. The death was caused by the .neglect of the company to give the usual, and as it seems universal, signal that a train was behind by flagging, as it is called, the regular train as it passed on. No flags *369 being on tbe train, the deceased had every reason to believe that the track was clear, and none to forewarn him of his danger. He had started home at his usual hour, was in his proper place, guilty, as far we can see, of no negligence, and totally without suspicion of the danger to which he was exposed by the neglect of the company in whose employ he was. In fact the failure to flag this “ wild train,” as it is called, was such neglect, as it may well be said of it, that it operated .to lure him on to destruction.
Many questions of admissibility of evidence are stated to have been erroneously ruled. On careful examination of the record, we see nothing however for which we can feel authorized to reverse this case. We need not refer to them in detail. The case has been submitted to the jury under a charge, unexceptionable, as we think, especially to the defendants, and we affirm the judgment of the court below.